LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, New York 11793
(516) 826-6500
David A. Blansky, Esq.
Salvatore LaMonica, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:                                                            Chapter  7
                                                                  Case No. 09-70955-REG
GOLDAN, LLC,

                     Debtor.
--------------------------------------------------------X
ALLAN B. MENDELSOHN, AS CHAPTER
7 TRUSTEE OF GOLDAN, LLC,

                     Plaintiff,

          - against -                                             Adv Pro No.

FRANCINE DANIELS,

                     Defendant.                           **COMPLAINT**
-------------------------------------------------------x

        Plaintiff Allan B. Mendelsohn, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of Goldan,

LLC (the "Debtor"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, as and for his

Complaint against defendant Francine Daniels (the "Defendant"), alleges as follows:

                            **Nature of the Proceeding**

        1.        This adversary proceeding is brought to avoid and recover funds wrongfully conveyed

to the Defendant in connection with a Ponzi scheme perpetrated by the Debtor and one of its

members, Mark Goldman ("Goldman").

## Jurisdiction and Venue

2.      Since this action arises under the pending Chapter 7 bankruptcy case of the Debtor, the United States Bankruptcy Court for the Eastern District of New York (the "Court") has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334 and Bankruptcy Rules 6009 and 7001.

3.      The statutory predicates for the claims asserted herein are 11 U.S.C. §§ 105, 541, 542, 544, 547, 548, 550, and 551, New York State Debtor and Creditor Law § 272, *et. seq,* general common law, and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(F), 157(b)(2)(H) and 157(b)(2)(O).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## Background

6.      On February 18, 2009 (the "Filing Date"), an involuntary petition was filed against the Debtor by the petitioning creditors, Michael Litvin, Daniel Perla and Louis Fox, for relief pursuant to Chapter 7 of the Bankruptcy Code.

7.      An Involuntary Summons was issued on February 19, 2009.

8.      An Order for Relief was entered on February 20, 2009.

9.      On February 20, 2009, the Plaintiff was appointed the interim Chapter 7 Trustee in this matter and he has since qualified and is the duly appointed and acting permanent Trustee of this estate.

## Parties

10.    Upon information and belief, the Defendant is an individual residing at 1152 Boca Woods Lane, Boca Raton, Florida 33428 and the mother of one of the Debtor's founding members, Jeffrey Daniels.

11.    The Plaintiff is authorized to assert his claims under § 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

### Allegations Applicable to All Claims for Relief

**A.      The Debtor and Its Fraudulent Scheme**

12.    Prior to the Filing Date, the Debtor was a New York limited liability company having its principal place of business located at 585 Stewart Avenue, Garden City, New York.

13.    The Debtor was formed in or about March 2000 by Goldman and Jeffrey Daniels for the purpose of soliciting investors (the "Goldan investors") to provide money to purchase residential and commercial properties (the "Goldan properties"), which would be developed, rented and managed, or re-sold by the Debtor at a profit.

14.    In or about and between April 2003 and January 2009, within the Eastern District of New York and elsewhere, Goldman devised a scheme and artifice to defraud the Goldan investors, and to obtain money and property from the Goldan investors by means of materially false and fraudulent pretenses, representations and promises involving the purchase and sale of the Goldan properties.

15.    As part of the scheme to defraud, the Debtor and Goldman solicited approximately 31 Goldan investors to provide approximately $48 million by means of interstate wire transfers, mailed checks and checks submitted by hand, to purchase various Goldan properties in Nassau and Suffolk

counties in New York.

16.     To induce the Goldan investors to provide money to the Debtor, Goldman represented that investors would receive monthly interest income to be generated from the Debtor's development and management of the Goldan properties.

17.     As to certain Goldan investors, Goldman represented that they would receive a share of profits from the sale of any Goldan properties for which those Goldan investors contributed purchase money.

18.     Goldman represented that each Goldan investor's principal would be secured by a promissory note or mortgage, and that the Debtor would not hypothecate the investor's principal interest in any Goldan property.

19.     It was a further part of the scheme to defraud that Goldman prepared and mailed to Goldan investors promissory notes and mortgages relating to each Goldan property for which an investor contributed purchase money.

20.     Goldman represented to the Goldan investors that the executed mortgages would be recorded in the appropriate county clerk's office, thereby establishing a lien in favor of the contributing Goldan investors.

21.     With respect to multiple Goldan properties, such mortgages were not recorded, thereby concealing the ownership interest of the Goldan investors.

22.     It was a further part of the scheme to defraud that Goldman used the Goldan properties as collateral to obtain approximately $20 million in additional loans from banks by concealing the existence of the mortgages and partnership agreements of the Goldan investors, and

without notifying the Goldan investors of the hypothecation of property in which they believed themselves to hold an ownership interest.

23.     The Debtor was operated as a Ponzi scheme in which Goldman concealed the ongoing fraud in an effort to hinder, delay and defraud other current and prospective investors of the Debtor.

24.     Upon information and belief, commencing in or about late 2003, the Debtor began losing money in its business operations, and the likelihood of generating sufficient profits from the Goldan properties to repay all of the Goldan investors ceased.

25.     Upon information and belief, the Debtor utilized money invested by new investors or reinvested money to keep the scheme going, to pay Goldan investors principal and/or profit, and to enrich Goldman and others, including the Defendant, until such time that the repayment of earlier Goldan investors overwhelmed the flow of new investments and caused the collapsed of the Ponzi scheme.

26.     The payments to Goldan investors constituted an intentional misrepresentation of fact regarding the underlying investments and were an integral and essential part of the fraud.

27.     The payments to Goldan investors were necessary to avoid detection of the fraud, retain existing investors and lure other investors into the Ponzi scheme.

28.     The Debtor used the funds deposited for the purpose of new investments to continue operations, to pay earlier Goldan investors and to make other transfers.

29.     Due to the siphoning and diversion of new investments to repay earlier Goldan investors, the Debtor was able to stay afloat only by using the principal invested by some investors to pay other Goldan investors.

30.     Upon information and belief, the Debtor continued to solicit investments with the knowledge that it would not be able to pay those investments back from its business operations.

31.     Upon information and belief, during the pre-bankruptcy period the Debtor had limited earned income and limited sources of cash aside from new investments.

32.     Upon information and belief, every "investment" deepened the Debtor's insolvency.

**B.      The Goldman Criminal Case**

33.     On January 26, 2009, under case no. 09-CR-00597, the United States filed a criminal complaint against Goldman in which he was charged with knowingly and intentionally devising a scheme and artifice to defraud and obtain money by false pretenses, representations and promises, and for the purpose of executing such scheme and artifice using the U.S. mail and commercial carriers, in violation of 18 U.S.C. § 1341.

34.     According to the criminal complaint, on January 22, 2009, Goldman admitted to a criminal investigator from the U.S. Attorney's Office and a U.S. Postal inspector that he had intentionally failed to file mortgages recording the ownership interests of various Goldan investors on numerous Goldan properties for the purposes of concealing the existence of the mortgages so that he could obtain additional financing against the same properties and to evade paying mortgage tax, which he told the Goldan investors would be paid by the Debtor.

35.     On March 11, 2010, Goldman entered a guilty plea to count one of a single count indictment accusing him of the felony charge in violation of 18 U.S.C. § 1341.

36.     As part of his plea, Goldman admitted that "[b]etween 4/03 and 1/09, within EDNY, the defendant, together with others, knowingly and willfully conspired to devise a scheme and artifice to defraud others and to obtain money by false and fraudulent pretenses using the U.S. mails

and commercial carriers."

37.     As of the date of this complaint, Goldman was in custody and awaiting sentencing.

**C.     The Transfers**

38.     Within six years of the Filing Date, the Debtor made transfers to the Defendant aggregating $81,046.83 (the "Transfers").  A schedule of the Transfers is annexed as Exhibit "A".

39.     $15,000.00 of the Transfers were made within two years of the Filing Date (the "Two Year Transfers").

40.     $6,750.00 of the Transfers were made within one year of the Filing Date (the "One Year Transfers").

41.     The Debtor received less than fair consideration or reasonably equivalent value in exchange for the Transfers and the Two Year Transfers.

42.     As the Debtor failed to receive fair consideration or reasonably equivalent value in exchange for the Transfers, this estate has been damaged in a sum to be determined at trial, but no less than $81,046.83.

43.     The Debtor had creditors holding unsecured claims against it at the time of the Transfers and Two Year Transfers that continued to be creditors of the Debtor as of the Filing Date.

44.     The Defendant has failed to turn over any part of the Transfers or the Two Year Transfers to the Plaintiff.

45.     Plaintiff's investigation is ongoing and the Plaintiff reserves the right to (i) supplement the information regarding the Transfers and any additional transfers and (ii) seek recovery of such additional transfers.

46.    To the extent that any of the avoidance and/or recovery claims may be inconsistent with each other, they are to be treated as being plead in the alternative.

## FIRST CLAIM FOR RELIEF
### (Property of the Estate)

47.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "46" as if set forth fully herein.

48.    The Debtor had a legal and equitable interest in the Transfers.

49.    The Debtor's legal and equitable interest in the Transfers is property of the estate.

50.    By reason of the foregoing, the Plaintiff is entitled to the entry of an Order and judgment against the Defendant, under §§ 541 and 542 of the Bankruptcy Code: (a) in an amount as yet undetermined, but in no event less than $81,046.83; (b) directing the immediate turnover of the Transfers or the value thereof; and (c) for a full and complete accounting of Defendant's use of the Transfers.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Conveyance)

51.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "50" as if set forth fully herein.

52.    At the time of the Transfers, the Debtor was insolvent or rendered insolvent as a result of the Transfers.

53.    The Transfers constitute fraudulent conveyances in violation of New York State Debtor and Creditor Law § 273.

54.    Under Bankruptcy Code §§ 544(b), and 550, and New York State Debtor and Creditor Law § 273, the Plaintiff may avoid the Transfers.

55.     By reason of the foregoing, the Plaintiff is entitled to judgment against the Defendant: (a) setting aside the Transfers and (b) in an amount as yet undetermined, but in no event less than $81,046.83, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court.

### THIRD CLAIM FOR RELIEF
(Fraudulent Conveyance)

56.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "55" as if set forth fully herein.

57.     At the time of the Transfers, the Debtor had incurred, or was intending to incur, debts beyond its ability to pay them as they became due.

58.     The Debtor did not receive fair consideration from the Defendant in exchange for the Transfers.

59.     The Transfers constitute fraudulent conveyances of the Debtor's assets in violation of New York State Debtor and Creditor Law § 275.

60.     Under Bankruptcy Code §§ 544(b), and 550, and New York State Debtor and Creditor Law § 275, the Plaintiff may avoid the Transfers.

61.     By reason of the foregoing, the Plaintiff is entitled to judgment against the Defendant: (a) setting aside the Transfers and (b) in an amount as yet undetermined, but in no event less than $81,046.83, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court.

## FOURTH CLAIM FOR RELIEF
(Fraudulent Conveyance)

62.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "61" as if set forth fully herein.

63.    The Transfers were made with the actual intent to hinder, delay, or defraud present or future creditors in violation of New York State Debtor and Creditor Law § 276.

64.    Under the Bankruptcy Code §§ 544(b), and 550, and New York State Debtor and Creditor Law § 276, the Plaintiff may avoid the Transfers.

65.    By reason of the foregoing, the Plaintiff is entitled to judgment against the Defendant: (a) setting aside the Transfers and (b) in an amount as yet undetermined, but in no event less than $81,046.83, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court.

## FIFTH CLAIM FOR RELIEF
(Attorney's Fees)

66.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "65" as if set forth fully herein.

67.    The Transfers constitute fraudulent conveyances of the Debtor's assets in violation of New York State Debtor and Creditor Law § 276(a).

68.    By reason of the foregoing, the Plaintiff is entitled to judgment against the Defendant, under New York State Debtor and Creditor Law § 276(a), for reasonable attorney's fees in an amount to be determined by the Court in connection with the prosecution of this action.

## SIXTH CLAIM FOR RELIEF
(Unjust Enrichment)

69.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "68" as if set forth fully herein.

70.     The Defendant was enriched as a result of the Transfers.

71.     The enrichment of the Defendant was at the expense of the Debtor and this estate.

72.     The circumstances relating to the Transfers are such that equity and good conscience require that the Defendant compensate the estate.

73.     By reason of the foregoing, the Plaintiff is entitled to judgment against the Defendant in an amount as yet undetermined, but in no event less than $81,046.83, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court.

## SEVENTH CLAIM FOR RELIEF
(Preferential Transfers)

74.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "73" as if set forth fully herein.

75.     As the Defendant is the mother of one of the members of the Debtor, Jeffrey Daniels, at all times relevant, she was an insider of the Debtor on the dates she received the One Year Transfers.

76.     The One Year Transfers were made within one year of the Filing Date.

77.     Upon information and belief, the One Year Transfers were made to, or for the benefit of, the Defendant.

78.     Upon information and belief, the One Year Transfers were made on account of an antecedent debt owed by the Debtor to the Defendant.

11

79.     The One Year Transfers were made while the Debtor was insolvent.

80.     The One Year Transfers enabled the Defendant to receive more than she would have otherwise received: (a) in the Debtor's Chapter 7 bankruptcy case; (b) if the One Year Transfers had not been made; and (c) if the Defendant received payment to the extent provided by the provisions of the Bankruptcy Code.

81.     The One Year Transfers are avoidable and recoverable by the Trustee under §§ 547(b) and 550 of the Bankruptcy Code.

82.     By reason of the foregoing, the Plaintiff is entitled to a judgment against the Defendant: (a) setting aside the One Year Transfers; and (b) in the sum of not less than $6,750.00, plus interest thereon, as may be determined by the Court, plus attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF
(Fraudulent Conveyance)

83.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "82" as if set forth fully herein.

84.     The Two Year Transfers were made within the two year period preceding the Filing Date.

85.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Two Year Transfers.

86.     Upon information and belief, the Debtor: (a) was insolvent on the date the Two Year Transfers were paid or became insolvent as a result of the Two Year Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was unreasonably small capital; or (c) intended to incur or believed that it would incur, debts that would be beyond its ability to pay as they matured.

12

87.     The Two Year Transfers constitute fraudulent conveyances under Bankruptcy Code §
548(a)(1)(B).

88.     By reason of the foregoing, the Plaintiff is entitled to judgment against the Defendant:
(a) setting aside the Two Year Transfers and (b) in an amount as yet undetermined, but in no event
less than $15,000.00, plus interest thereon, attorney's fees and costs, or such other amount as may be
determined by the Court.

## NINTH CLAIM FOR RELIEF
### (Fraudulent Conveyance)

89.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "88"
as if set forth fully herein.

90.     The Two Year Transfers were made within the two year period preceding the Filing
Date.

91.     Upon information and belief, the Two Year Transfers were made with the actual
intent to hinder, delay, or defraud the Debtor's creditors.

92.     The Two Year Transfers constitute fraudulent conveyances under Bankruptcy Code §
548(a)(1)(A).

93.     By reason of the foregoing, the Plaintiff is entitled to judgment against the Defendant:
(a) setting aside the Two Year Transfers and (b) in an amount as yet undetermined, but in no event
less than $15,000.00, plus interest thereon, attorney's fees and costs, or such other amount as may be
determined by the Court.

**WHEREFORE**, the Plaintiff demands judgment on his claims for relief against the
Defendant as follows:

1.      On the first claim for relief, under §§ 541 and 542 of the Bankruptcy Code: (a) in an amount as yet undetermined, but in no event less than $81,046.83; (b) directing the immediate turnover of the Transfers or the value thereof; and (c) for a full and complete accounting of Defendant's use of the Transfers;

2.      On the second claim for relief: (a) setting aside the Transfers; and (b) in an amount as yet undetermined, but in no event less than $81,046.83, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court;

3.      On the third claim for relief: (a) setting aside the Transfers; and (b) in an amount as yet undetermined, but in no event less than $81,046.83, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court;

4.      On the fourth claim for relief: (a) setting aside the Transfers; and (b) in an amount as yet undetermined, but in no event less than $81,046.83, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court;

5.      On the fifth claim for relief, under New York State Debtor and Creditor Law § 276(a), for reasonable attorney's fees in an amount to be determined by the Court in connection with the prosecution of this action;

6.      On the sixth claim for relief, in an amount as yet undetermined, but in no event less than $81,046.83, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court;

7.      On the seventh claim for relief: (a) setting aside the One Year Transfers; and (b) in an amount as yet undetermined, but in no event less than $6,750.00, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court;

8.      On the eighth claim for relief: (a) setting aside the Two Year Transfers; and (b) in an amount as yet undetermined, but in no event less than $15,000.00, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court;

9.      On the ninth claim for relief: (a) setting aside the Two Year Transfers; and (b) in an amount as yet undetermined, but in no event less than $15,000.00, plus interest thereon, attorney's fees and costs, or such other amount as may be determined by the Court;

10.     Under §502(d) of the Bankruptcy Code, disallowing any and all claims of the Defendant until she has repaid the Transfers to the estate; and

11.    For such other and further relief as the Court deems just and proper.

Dated: Wantagh, New York
February 16, 2011

**LAMONICA HERBST & MANISCALCO, LLP**
Attorneys for Allan B. Mendelsohn,
Chapter 7 Trustee for Goldan, LLC

By:    _s/ David A. Blansky_
David A. Blansky
A Partner of the Firm
3305 Jerusalem Avenue
Wantagh, New York 11793
(516) 826-6500

M:\Documents\Company\Cases\Goldan, LLC\Adv Actions\Other Avoidance Adv Pros\Francine Daniels\Francine Daniels Complaint.doc